The next matter, number 22-1625, Josephine A. Fonjia v. Merrick B. Garland. Counsel for the petitioner, please introduce yourself on the record to begin. Good morning, Your Honors. My name is Harold Smith. I am the attorney for the petitioner, Josephine Fonjia. And I will say at the outset that what happened here is a situation where this petitioner, a frightened woman who was tortured and had to flee the country of Cameroon, entered the United States and, while in detention, had her hearing before an immigration judge. At the conclusion of the hearing, the immigration judge found her credible and denied her and granted her withholding of removal. Mr. Smith, I don't mean to be rude, but you have very limited time. Give us some credit. We know what the facts are. So why don't you get to the issues that are up on the petition for review? Thank you. Essentially, she was given, at the conclusion of the hearing, an order, a written order, which stated only one reason for the- Just to follow up on the point, we know the facts of the case. The legal argument against you is that, despite the facts of the case, we can't reach them because they weren't exhausted.  Firstly, she did not properly waive her appeal rights. The argument is that argument was not exhausted. So what is the argument that it was? Her appeal right was not exhausted because she was never advised as she properly should have. The argument is that the argument that the appeal waiver is ineffective is not exhausted. That's correct. So what is the reason why that's not the case? When was it first raised, and why is it permissible to raise it for the first time in that venue? Because when she was before the immigration court, the immigration judge was obligated to- This was a pro se litigant. Someone totally unfamiliar with what the law was, what her rights were, anything. At the end of the argument, at the end of the hearing, the immigration judge simply said, do you want to- granted her withholding of removal. Did not explain to her what withholding of removal meant. And there's a huge difference between withholding of removal and asylum. The withholding of removal provides no path to citizenship in the United States. And this argument was not raised in the motion to reopen, correct? Yes, it was. I thought it was only raised in the motion to reconsider the denial of the motion to reopen. Yes, you're right, Your Honor. And that seems to be part of the government's argument for why it was not properly exhausted. Do you have a response to that? It wasn't properly exhausted. No, no. They're saying it wasn't. You have to say it was properly exhausted, which means it's permissible to raise it for the first time in the motion to reconsider the denial of the motion to reopen. Because there was, in the order, the actual order that was written by the immigration judge, the order, which I personally was given for the first time by the petitioner, Ms. Fonga, lists only the reason for denial of the application for asylum was the third country transit law. The third country transit law existed at that time, and it barred asylum if you went through a third country and did not claim asylum there. This was ultimately So if I follow, it sounds like what you're saying is at the time you filed the motion to reopen, there would have been no reason to challenge the validity of the appeal waiver. Upon the denial of the motion to reopen, when they also said there was the firm resettlement basis for the denial, that was the first time it would have made sense to challenge the validity of the appeal waiver, which you then did in the motion to reconsider. Yes. Is that the idea? Yes. And therefore you say we exhausted it at the first moment we could have exhausted it. Absolutely. That was the only time that all I ever saw was an order listing the third country transit law as the only reason for the denial of asylum. And this was very common at the time because many, many, I'm a pro bono, and I do this for a lot of clients, and everyone's asylum application was being denied because of this. Then when the federal district court found this law invalid, that's when the motions to reopen were made. And as far as I was concerned, in the first instance when the motion to reopen was made And what's the significance of the fact that I recognize the decision, the written decision only references the transit grant. That's right. But you don't deny that it was in fact orally stated that a separate ground of decision was the firm resettlement ground. Correct? In the hearing? Yes. Yes, except that I, hard as I tried, I couldn't get the transcript of the hearing. I mean, the record is clear on that. And the idea is As soon as I got it, yeah. But it is the case that, and I understand the situation with the petitioner, I'm just asking a factual question. The petitioner was told of the firm resettlement basis for the denial. I understand your arguments about why that doesn't matter because of the realities of her situation. But in fact, she was told that at the hearing? Yes. Yes. Without having the floppiest idea what that meant. And she's filed a declaration to that effect, right? I'm sorry, Your Honor? She's signed a declaration to that effect that she didn't understand what the immigration judge was saying. Yes. Said he was talking very fast. Yes, yes. And what I really understood was that I could stay in the country. Correct, correct. Yes, Your Honor. Can I ask you one last question? Has this case been through our camp mediation process? Through our mediation process, has this? No. It has not, right? I wish it had, but it's never been. In fact, I mentioned to counsel this morning something about that. We can do it by order and have. Say, I didn't hear your answer. I said that I mentioned that to my government counsel this morning before the argument to try to talk about it. But in any event, here I am. Okay. And so basically, the situation that I believe I – there is also a part of this that has to do with the argument today with the proper venue of this court. And I am passing on that. And there's an amicus, I believe, that's going to argue whether there's some kind of suggestion that the First Circuit is not the proper forum here when it seems perfectly clear that Puerto Rico, where this immigration judge was from Puerto Rico, and that's part of the First Circuit. And in any event, I welcome any more questions. Thank you. Thank you, Your Honors. Thank you, counsel. At this time, if Attorney Kim would introduce himself on the record to begin. Good morning, Your Honors. Good morning, Chief Judge Barron. May it please the Court. Sang-Yeop Kim on behalf of AMEQ Korea in this case. We are appearing before this Court because of the judicial venue question. And judicial venue question is important not only for the question of where noncitizens should file their petitions for review, but also for the choice of law question before the agency. The statute says petitions must be filed at the Circuit Court where the immigration judge completed the proceedings. In 2004, this Court made a finding that that statute is ambiguous. In light of this ambiguity, the best reading of the statute is that judicial venue is proper at the First Circuit if the administrative venue of the proceedings under the regulation was within the First Circuit. In practice, that means either the Boston Immigration Court or San Juan Immigration Court. Now, this reading is sound and fair to all parties. It is sound because it is consistent with the choice of law question adopted by agency in the matter of Garcia. It is also fair to all parties because at the outset, the Department of Homeland Security has the broad discretion to designate the venue. Can I ask you this? Yes, Chief Judge. The argument you're making excludes the Fourth Circuit's position, that it turns on where the immigration judge happens to be located physically at the time of the hearing, correct? Yes, Your Honor. Do you have a position as between the Administrative Control Court and the designated court for hearing that the government seems to be asserting is the proper way to resolve the ambiguity? We do have a position. And what's at stake in that position? The stake is that if the court were to adopt the government's position that the immigration court listed in the charging document is controlling, not the location of the immigration court where the charging document is filed. Except it can move on motion of the parties. Yes, Your Honor. Even on the government's view. Yes, Your Honor. And since that's the case, do you have a reason to be concerned about that? Yes, if I may finish. So there is workability issue. Let me provide an example of the Exhibit H of the reply brief in FONSIA. And also we submitted the same document as part of our response to the government's 2018 letter. Let's say that there's a charging document that has Miami Immigration Court. And if DHS does not file that charging document with Miami Immigration Court, but instead files with Boston Court without issuing the Form I-831, which is to amend the charging document, then under Medgar Garcia, under the government's position, that means Miami Immigration Court would be the admin venue under the regulation. So the non-citizen would not want to have the case at Miami. Then the only way to change that location to Boston Court would be that either DHS files motion to change venue or non-citizen has to do it. But in practice, that motion would be rejected by Miami Immigration Court because they don't even have a case docketed in the first place. So there is a workability issue in certain cases. Maybe in reality the court may not see many cases that would cause a problem of this discrepancy. And also that issue has not come up in either case in Ponzia or Brazil. So we asked the court to leave that question open as we explained in our 2018 letter. But in terms of our position, there is a workability issue if the court were to adopt the Medgar Garcia's position of that particular issue, which is shared by the government. Unless the court has any questions, I can address other claims in the subsequent case. Thank you. Thank you, Your Honor. At this time, would counsel for the respondent please introduce herself on the record to begin? Good morning. May it please the court. Michelle Slack on behalf of the Attorney General Merrick Garland. The court is looking at two procedural matters in this case. The first is venue, the second is finality, and the issue of exhaustion. Both issues strike a balance between fairness and certainty. Beginning with the venue issue, the board recently in its decision in matter of Garcia struck this balance between certainty, predictability, and fairness to the parties before determining what is an appropriate position to take about what law applies in a case. Can I ask you just this? In terms of our deference that we owe to the BIA on the question of how to interpret the judicial venue statute, does the government have a view of whether we do owe it any deference? Well, to begin, Your Honor, the board itself did not suggest that it was interpreting 1252B2, the venue provision. The board not only did not suggest that, didn't the board expressly say that we owe no deference, that they expected the courts to give no deference? Exactly, Your Honor. That it wasn't a matter of deference for purposes of interpreting the statute. Perhaps the court would consider the matter under Skidmore, because it does seem that the board would have a certain level of expertise about where are proceedings actually happening. It wouldn't have expertise as to what this court, this court is free to conclude on its own without deference, where those proceedings are taking place and where they conclude for purposes of the venue statute. It would be inappropriate for the board to be trying to tell the court... Right, so I guess I'm just trying to understand what... We have precedent suggesting it's an ambiguous statute. It seems like we don't have an agency to defer to as to how to resolve the ambiguity. So, what do we do? But you could take guidance from the matter of Garcia's decision, because it's certainly appropriate for the board, in the first instance, to be trying to determine where its own proceedings are actually taking place and that that could provide guidance for the court in answering the question that's posed in 1252B2. In fact, in this court in 2004 in Jorserley, I know it took some time for the agency to speak on this issue, but invited the agency to opine on the matter. And the relevant question, I guess, is not where it's taking place, but where it's completed, right? So, where it's taking place to the point where it's completed, correct, Your Honor. So, that involves both where proceedings are happening and then the point of completion. Counsel, in your view, whatever daylight exists between the government's position and, for example, amici position here, does it matter at all in this case and the next case? Do we have to decide this from your perspective? From my perspective, no. In fact, in the 28J response that I filed to amicis about Manner of Garcia, it appears that what little dispute, what little light there was between has sufficiently closed for purposes of this case. Because the board concluded that it should be based on administrative venue is also what's the choice of law rule. Well, here's my only puzzle. I take it the government, does the government share amici's view that it is important to address whether the Fourth Circuit view of venue is correct? Just as a practical matter, is it important for that to be resolved? In the context of this case, it doesn't really present itself. But, I mean, is it, in fact, a practical problem, the uncertainty about that question, so that it would be helpful to resolve if that's right, everybody knows it's right, if the Fourth Circuit's wrong about that. At least in the First Circuit, everybody knows that the Fourth Circuit's wrong about that. Certainly the court, in the context of issuing a rule in this case, could speak to why it is that this venue is proper. Is there a way to resolve the question of whether the Fourth Circuit is wrong, to give a rationale, if one thought it was, that would not require us to choose between amici's view and your view? Yes, Your Honor. What is that pathway? That the court could explain why the appropriate venue is in the First Circuit. But how does one do that without choosing between your view and amici's view? Because the matter of Garcia decision has shifted the government's view about where is the appropriate place. Well, counsel, let me suggest that the venue statute requires us to give dispositive weight to where the IJ completed the proceedings. You can't determine where the IJ completed the proceedings, unless you first determine where the proceedings were commenced and move it forward. And in this case, the case that's before us now, on both your view and the amici's view, the proceedings were commenced in the First Circuit. Correct, Your Honor. Therefore, they were completed in the First Circuit. And the location of the immigration judge is immaterial. Therefore, the Fourth Circuit's view is not the view of this court. Yes. That's what you like an opinion to say. And that's very much the rationale that would be applied in light of matter of Garcia. But I thought the government's view was that no matter where it's commenced, it could be completed elsewhere upon a motion for change of venue. If there's a motion for change of venue. Correct. But in this case, there was no. And amici's position is that that can't matter. Isn't that right? Why don't, if there's a motion for change of venue made and granted, I think it does matter. I thought amici was trying to tell us that if we make it turn on a rationale in which a motion for change of venue would matter, we'd run into the practical problem that amici was describing when he just argued. Did I misunderstand him? Perhaps I've misunderstood the amici's argument. That amici's argument appears to be based on venue as well. It is. But I thought what amici was saying is that if we allow it to be the government's position, and it turns on a motion for change of venue, we could run into a situation in which that motion won't really be made and no one will be able to accept it. And so we'll be in a situation where it's occurring in a place that the docket won't show to be the actual venue. And there'll be no way to match the two up. Which is why amici says don't accept the government's view. Accept its view, which makes it be the administrative control court. Did I misapprehend? I thought that was the divide between the two of you. I thought the divide was the difference between the designated hearing location and the administrative control court. Correct. But the designated hearing location can shift upon a motion for venue. Both would. Change. Your Honor, both would shift. Because the venue. Right, but what, unless I just misunderstood, I thought amici was saying there are circumstances in which if you don't tie it just to the administrative control court, you'll run into the problem that the place where it's being located. He gave the example of Miami versus Boston. You won't be able to get a motion for the change of venue that will match where it's actually happening. Now, in that situation, are you saying venue would be in the administrative control court or not? Did you follow his example? Venue is going to be located where the regulations dictate the venue is located. And all of these hearing locations and administrative control courts are linked to one another. If you've got a change of venue that takes place in a case, it's going to move also the administrative control court. Because those two things put together are what establish a venue under matter of Garcia. It sounds like you're denying the reality of what was posited by amici, which I understood to be, for example, charging document says Miami, but it immediately goes to Boston, never goes through Miami. And if there's a motion for change of venue in Miami, they're going to reject it because they don't even have a case there. If the charging document says Miami, then it should be filed in Miami. But the hearing is actually happening in Boston. That's the hypothetical that's posited. Are you just saying that can't happen? That the charging document says Miami. It's filed in Miami, and then it's changed to Boston without a formal change of venue. No, I think as I understood what counsel was saying, charging document says Miami, but nothing happens in Miami. So I'm assuming that's a real problem, a workability problem. But it sounds like you're rejecting that as being unrealistic. Matter of Garcia actually accounts for unusual circumstances in which it's unclear where the case is venue, and then it requires the immigration judge to identify the location of the venue and to hear from the parties with respect to that location and what law would apply. And those types of odd scenarios are accounted for by the board in matter of Garcia. And so if we adopted that, one could then explain why the Fourth Circuit position was wrong in a way that would apparently accommodate both positions of AMICI and the government. Correct, Your Honor. I see that my time has expired. You can address the merits. Okay. The second question is one that goes to the finality of the proceedings before the immigration judge. The proceedings concluded before the immigration judge in this case on May 1, 2020, when he issued his oral decision and found that Petitioner was eligible for- Just because of time, could you just get to the question of why is it wrong to be challenging in the motion to reconsider? The validity of the appeal waiver if it's the case that counsel couldn't have known that it mattered until the motion to reconsider, the denial of the motion to reopen. It was too late when he filed the motion to reopen.  What Petitioner had to do if she wanted to challenge either firm resettlement or her appeal waiver was bring a direct appeal on those issues. But then why not treat the motion to reconsider as just- That's the first time she would have learned of the basis. That's the practical reality. You're not denying that until that moment there was no reason to know that there was a firm resettlement ground that was insulated from a potentially invalid appeal waiver. Yes, Your Honor, I am challenging that. She was in the hearing. The issue of firm resettlement and the consequences of her having applied for went back and had her picture taken. Let's say even aside from her account of why you're wrong about that, that her situation was such that she wouldn't have understood what was going on, she wasn't apprised accurately of the appeal. On the merits, maybe she's wrong about all of that. The question I'm asking is why isn't the first time that would have been appropriately raised, given their account of all that transpired, in the motion to reconsider the denial of the motion to reopen, just given the way the facts unfolded? Because they're equating petitioner being aware of the grounds to challenge the IJ's decision with her attorney that she didn't even hire until after the decision became final administratively. And that's not the way that the system of rules work. If that was the case, then someone could always delay hiring counsel and then bring up something that they didn't appreciate during the actual proceedings. Let me approach this from another direction, because I'm not sure we even have to get to the appeal waiver. The appeal period runs, but there's filed on her behalf a timely motion to reopen. That motion only mentions the third country, transit bar, which is a new development, and the only thing she's been apprised of in the written memorandum. And despite her effort, she hasn't been able to get the audio tape. So it's understandable why she only challenges that. The reason the motion to reopen is denied is because of the firm resettlement rule, which she wasn't apprised of in the motion to reconsider. It's kind of like the hidden ball trick in baseball. So you get a motion to reconsider filed by her attorney with two declarations explaining all their efforts to obtain these tapes. They didn't know about the firm resettlement rule, that the firm resettlement rule is very dubious, and he wants to reopen so he can challenge that rule. If that motion of reconsideration is properly denied, and it's denied by the IJ for a reason that makes no sense, says that no one made any effort to get the transcript of the tapes, which is contrary to the declarations, but if that motion to reopen is granted, the proceedings are reopened and the appeal waiver doesn't become central to this. And what's the government's response to why the motion to reconsider shouldn't have been granted? Because the motion to reconsider is a motion to reopen. And in order to have a proper motion to reopen, it has to be based on new evidence or law. And what's based on new evidence or law? The new law is the abrogation of the third-party transit rule, and the attorney has said in his motion to reconsider, this is the first time that I'm hearing about the firm resettlement rule, and there are lots of problems with that rule. So why shouldn't we give her an opportunity to show what the problems are? Because none of the challenges she raises to the merits of the immigration judge's decision on firm resettlement are new law that didn't exist at the time the judge entered the order, and it's not new facts that didn't exist at the time of the judge's order. We don't know because there are no new facts in the record. The immigration judge's finding on the firm resettlement rule is fact-free. It contains no relevant factual findings at all. Is your point that there's nothing new factually in the motion to reconsider? There's nothing new in the motion to reopen or the motion to reconsider. But what you're discounting what's new is the declaration from her about her not understanding what happened in that hearing. Now, it may be on the merits that can be rejected as not new, and is that what you're saying is effectively what the IJ did in denying the motion to reconsider? Yes. Well, what's the best authority to say that in an odd situation like that, the contention that the way that hearing unfolded in which you have a pro se litigant, in which you have an arguably inadequate appeal waiver, and in which the first time the ground is provided in a written form, occurs and is disclosed after, and the audio tapes aren't able to be gotten at the time of the motion to reopen, why isn't all of that itself the kind of new evidence that can support a motion to reopen and thus a motion to reconsider? What's the government's answer to that? Because it all goes back to what was happening at the hearing itself and what she understood and what she didn't understand at that time. But the only thing we know about what she understood at that time is her declaration where she says she understood virtually nothing. And that's new. And that's new, and it's not contradicted. There's nothing counterintuitive about it. This is a woman where English is a second language for her. She's unrepresented. She's detained. She's under all sorts of pressure. So there's nothing counterintuitive about this new evidence and nothing to oppose it, nothing to say, well, this was explained to her in some detail. The reference in the IJ's decision to the firm resettlement rule is to be charitable, cryptic. The IJ's reference to the firm resettlement rule is throughout the proceedings. There's at least six occasions during the proceedings when he explains the significance of the Mexican permanent residency card to her. And she even admits that she understood she could stay in Mexico. But there's a difference between I could stay in Mexico and I have the intention of residing in Mexico. It's clear from her actions that her intention all along was to come to the United States. She made that very plain in her testimony, and it's consistent with her entire course of action. Does the government have a view about CAMP? I know that our regs don't require it to go through CAMP, but we have ordered a number of cases in the last several years for CAMP consideration. Does the government have a view about it? I am generally open to mediating cases when the equities and the considerations in the case dictate. Okay. Thank you. Thank you, counsel. That concludes argument in this case.